■ WILLIAM I. WEISBERG et al., Respondents, v CHEMICAL BANK, Appellant. — Order entered February 24, 1984 in Supreme Court, New York County (Bruce McM. Wright, J.), denying defendant's motion to dismiss the complaint for failure to state a cause of action, is unanimously reversed, on the law, the motion is granted and the complaint dismissed, without costs.

Plaintiffs maintain a money market account in defendant bank, initially depositing $25,000 in December of 1982. At that time plaintiffs were provided with the bank's "regulations" governing such accounts, which, in pertinent part, set out the interest rates applicable, depending upon the average daily balance maintained. Although accounts falling below the $2,500 minimum would receive only the passbook rate of 5.25%, greater balances were subject to a floating "base" rate, plus, *"through June 1983"* a "BONUS" rate of .5% if the balance was at least $15,000, or a 1% "BONUS" if the balance was $25,000 or more. The "base" rate is determined weekly by the bank "based on market conditions." Thus, in a week where the base rate was set

by defendant at 9%, accounts over $14,999.99 earned 9.5% per annum, and accounts of $25,000 or more would earn at a 10% rate. The regulations issued to plaintiff also stated, "[the] Bonus rate offer may be withdrawn at any time but will not affect existing accounts."

On March 17, 1983, defendant amended its regulations to provide the 1% bonus rate to *all* accounts maintaining an average daily balance of $2,500 or more. Hence, all money market accounts now accrue interest at the same rate, i.e., the weekly "base" rate plus a 1% "bonus".

Plaintiffs complain that this amendment of the regulations derogated their original contract insofar as they no longer receive 1% more interest than accounts of less than $15,000. They point to the sentence, contained in the regulations they received, which states "[t]he exact rate you receive depends on the amount you keep on deposit." Plaintiffs argue that the original regulations, when read altogether, define the "base" rate as whatever the bank pays its smaller accounts of $2,500 to $14,999.99. Thus, plaintiffs seek an additional 1% over what they have already been paid, in accordance with their reading the regulations as establishing comparative rates by size of account.

We cannot agree with Special Term's finding ambiguity in what is plainly an agreement to pay plaintiffs 1% over the base rate, as set each week. That is how the regulations read, and if smaller depositors have subsequently been granted the same interest rate as plaintiffs have enjoyed all along, that is of no consequence to a fair and reasonable interpretation of plaintiffs' contract rights. Concur — Murphy, P. J., Sandler, Ross, Carro and Fein, JJ.